IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| EDWARD KOELLER, individually and behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PATHLOCK, INC.,<br><br>Defendant. | Civil Action No. 1:25-cv-02431-CNS-SBP |

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant Pathlock, Inc. ("Pathlock") respectfully moves, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the putative class action complaint (Dkt. 1, "Complaint") filed in this matter by Plaintiff Edward Koeller ("Plaintiff"), in its entirety, on the following grounds.

I. **INTRODUCTION**

In his Complaint, Plaintiff alleges in conclusory fashion that he received two "solicitation calls" on his "residential" cell number, either from Pathlock "and/or its affiliates, agents, and/or other persons or entities acting on [its] behalf," in violation of the National "Do Not Call" ("DNC") Registry provisions of the Telephone Consumer Protection Act ("TCPA"). Dkt. 1, ¶¶ 14, 13, 28, 39, 41. Yet, his pleading lacks sufficient facts supporting an inference that Pathlock bears any legal responsibility for those calls, let alone that they violated the TCPA in the first place. Such threadbare allegations cannot survive dismissal.

Though Plaintiff may note in response that the TCPA is a remedial statute designed to protect consumers from aggressive telemarketers, federal courts do not hold TCPA plaintiffs to lower pleading standards or give those armed with mere conclusions a free

pass to discovery because of this, either. This is for good reason. As the FCC noted, the TCPA unwittingly spawned a cottage industry of class action litigation, "has strayed far from its original purpose," and has "become the poster child for lawsuit abuse" in this country. *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 8073 (2015). This is perhaps an understatement. In fact, dozens of new TCPA class actions are filed weekly (even daily) in federal courts in every Circuit, often by entrepreneurial serial litigants and their counsel and not by consumers using the TCPA for its intended purpose. Such appears true here.[1]

Yet, all this is unsurprising, given the broad financial relief the TCPA affords plaintiffs and the ease with which even facially baseless claims can be brought and quickly settled for far beyond their value.[2] And while attorneys' fees are not available under the statute, even "remedial laws [like the TCPA] can be abused and perverted into money-making vehicles for individuals and lawyers" and used to seek a windfall of potentially ruinous damages and exorbitant legal fees from defendants through grossly expensive class action litigation. *Saunders v. NCO Fin. Sys.*, *Inc.,* 910 F. Supp. 2d 464, 465 (E.D.N.Y. 2012).

It is against this backdrop that federal judges across the country have recognized that, at the pleadings stage in TCPA cases and particularly in putative class actions, they

---

[1] *See, e.g., Koeller v. Cyberangel USA, Inc.*, No. 4:23-cv-00319 (E.D. Mo.); *Koeller v. Delinea Inc.*, No. 4:24-cv-00394 (E.D. Mo.); *Koeller v. Cyflare Security, Inc.*, No. 4:25-cv-00410-MTS (E.D. Mo.). A review of the dockets in Plaintiff's many other cases—where he filed substantially similar complaints suggesting he was called for **business reasons** on a **business line**—calls into serious question whether he even has standing to bring a TCPA DNC claim, which can only be brought by "residential" subscribers (as discussed below). Though not argued here, Pathlock reserves the right to address standing at a later time.

[2] Plaintiffs may recover up to $500 in statutory damages per call, trebled for willful/knowing violations. *See* 47 U.S.C. § 227(c)(5). This may seem small individually, but can be ruinous in a class action, hence why most TCPA cases are styled as class actions and settled for much more than a named plaintiff could receive at trial than if they proceeded individually.

must dutifully exercise their gatekeeping role under the Federal Rules to ensure that claims meet the plausibility threshold before subjecting defendants to the rigors and high costs of discovery, notwithstanding the TCPA's remedial nature. As such, TCPA complaints like the one at bar, built on a weak foundation of barren conclusions lacking in requisite factual support, are often dismissed by courts in and beyond this Circuit under Rule 12(b)(6). Plaintiff's Complaint here should suffer the same fate and be dismissed for several reasons:

**First**, it is firmly established that, no matter the provision invoked, all TCPA plaintiffs must first plead facts supporting a viable theory of TCPA liability (*i.e.*, direct or vicarious liability), or face dismissal under Rule 12(b)(6). *See, e.g., Escano v. Concord Auto Protect, Inc.*, 2023 WL 4247703, at *2-3 (10th Cir. June 29, 2023); *Nelums v. Mandu Wellness, LLC*, 2023 WL 5607594, at *8-9 (D.N.M. Aug. 30, 2023); *Childress v. Liberty Mut. Ins. Co.*, 2018 WL 4684209, at *3-5 (D.N.M. Sept. 28, 2018). This steadfast rule requires Plaintiff here to plausibly allege, with sufficient non-conclusory supporting facts, that Pathlock (i) itself, not a third party, "physically" placed each phone call at issue directly to him, as required for direct liability, or (ii) had a common law agency relationship any third parties who called him, as required for vicarious liability. *Id*. At the same time, the many well-reasoned authorities cited herein show that merely parroting the statute or case law and concluding the "defendant or its agents called me" cannot plausibly allege any TCPA liability theory. But that is <u>all</u> Plaintiff offers here, and this defect <u>alone</u> is fatal to his entire Complaint.

**Second**, Plaintiff's whole Complaint should also be dismissed under Rule 12(b)(6) because it lacks facts supporting other key elements of a TCPA DNC claim, including that Plaintiff (i) received a "telephone solicitation" call or (ii) is "residential telephone subscriber"

3

within the meaning of the TCPA. 47 U.S.C. § 227(c)(5); 47 C.F.R. §§ 64.1200(c)(2), (f)(15). Plaintiff's naked conclusory allegations on these points do not pass muster here, either.

## II. APPLICABLE LEGAL STANDARDS

Rule 12(b)(6) provides for dismissal where a plaintiff fails to state a claim for relief. Plaintiff's allegations "must be enough to raise a right to relief above the speculative level" and provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "[B]are assertion[s]" and "conclusory allegation[s]" will not suffice. *Id.* at 556-57. A "formulaic recitation of the elements" of a claim does not meet federal pleading standards and cannot survive dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Moreover, while the Court must generally accept Plaintiff's well-pleaded factual allegations as true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *McFadden v. City of Yukon,* 2010 WL 125444, at *1 (W.D. Okla. Jan. 7, 2010) (citation omitted). In short, Plaintiff must plead "specific factual allegations." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

## III. ARGUMENT

### A. The Complaint Should Be Dismissed Under Rule 12(b)(6) Because Plaintiff Fails to Plead Plausible Facts Supporting a Theory of TCPA Liability.

As an initial defect, the Complaint does not plausibly allege a theory of TCPA liability in this case. *See, e.g., Escano*, 2023 WL 4247703, at *2-4 (affirming dismissal). Courts recognize two potential theories of liability under the TCPA, which must be adequately pled in <u>all</u> cases: (i) direct liability; or (ii) vicarious liability. *See id.*; *see also Rogers v. Postmates Inc.*, 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020) (citing *Thomas v. Taco Bell Corp.*, 582 F.App'x 678, 679 (9th Cir. 2014)). As one court summarized these theories, "[f]or a

person to 'make' [or 'initiate'] a call under the TCPA [and be liable], the person must either (1) directly make the call, or (2) have [a common law] agency relationship" with the actual caller. *Pascal v. Agentra, LLC,* 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (quoting *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018)). *Accord Escano, supra. See also Childress*, 2018 WL 4684209, at *3-5 (discussing standards for direct and vicarious TCPA liability and dismissing under Rule 12(b)(6) on both bases). Failure to allege such theories warrants dismissal of any TCPA claim in its entirety under Rule 12(b)(6). *See, e.g., Escano* and *Childress, supra*; *Nelums,* 2023 WL 5607594, at *9 ("Because Plaintiff fails to satisfy the first elements of the TCPA and [an equivalent state statute]—that Defendants were directly or vicariously liable for the [subject] text messages—the Court does not reach Defendants' arguments regarding whether Plaintiff adequately plead the other elements" of the claims.). Here, Plaintiff failed on both fronts.

As to the former theory, direct TCPA liability applies only to defendants that directly "make" or "initiate" a phone call to the plaintiff. *Childress*, 2018 WL 4684209, at *3. Further, federal courts have uniformly interpreted the terms "make" or "initiate" in this context as the act of "physically" placing (or sending) the complained-of communications. *Id.*; *see also Sheski v. Shopify (USA) Inc.,* 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (citing *In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013)) (discussing key differences between direct and vicarious TCPA liability and the accepted standards for pleading same, and dismissing where plaintiff failed to adequately plead either). *See also Brownlee v. Allstate Ins. Co.,* 2021 WL 4306160, at *1 (N.D. Ill. Sept. 22, 2021) (dismissing TCPA claim on this basis, holding that plaintiffs must allege facts to "allow the Court to reasonably infer

that defendant is [directly] liable for each call" at issue); *Metzler v. Pure Energy USA LLC*, 2023 WL 1779631, at *6 (S.D.N.Y. Feb. 6, 2023) (dismissing on this basis, holding that all TCPA plaintiffs must "allege facts from which the Court can plausibly infer that [d]efendant has direct liability, even if it is also plausible that a third party made the call" to avoid dismissal); *Cunningham v. Daybreak Solar Power, LLC*, 2023 WL 3985245, at *2 (N.D. Tex. June 13, 2023) (same, holding "[a]t the pleading stage, the plaintiff must allege facts to support claim that the defendant is the party that [physically] initiated the [subject] calls").[3]

Conversely, direct TCPA liability "generally does not include persons or entities, such as third-party retailers, that might merely have some [indirect] role, however minor, in the causal chain that results in the making of a telephone call." *In re Dish Network,* 28 FCC Rcd. at 6583; *see also Bennett v. Celtic Ins. Co.,* 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022) ( "[A] defendant 'generally does not initiate calls [under the TCPA] placed by third-party telemarketers,' even if the third party had acted on its behalf.") (citation omitted).

Consistent with the bedrock federal pleading standards set forth in *Iqbal* and *Twombly* and their progeny, however, federal courts have also widely (and correctly) recognized that "[m]erely alleging that [a defendant or an agent] 'made' or 'initiated' [a] call" like Plaintiff did here "is not sufficient to allege a [direct] TCPA [liability] claim" or to avoid dismissal on this basis under Rule 12(b)(6). *Frank v. Cannabis & Glass, LLC,* 2019 WL

---

[3] While various provisions of the TCPA use the terms "make" or "initiate" somewhat interchangeably, federal district courts across the country have uniformly held that "make" or "initiate" in this context means to "physically" place the phone calls at issue. *See also Belleville v. Florida Insur. Services, Inc.,* 2024 WL 2342337, at *4 (S.D. Fla. May 23, 2024), *report and rec. adopted in part and rejected in part on other grounds,* 2024 WL 2794108 (May 31, 2024); *Meeks v. Buffalo Wild Wings, Inc.,* 2018 WL 1524067, at *3–5 (N.D. Cal. Mar. 28, 2018); *Hicks v. Alarm.com*, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020).

6

4855378, at *2 (E.D. Wash. Oct. 1, 2019). Countless courts in and beyond the Tenth Circuit have reached the same sound conclusion when dismissing such cases. *See, e.g., Escano,* 2023 WL 4247703, at *2-3 (finding plaintiff's unsupported allegations that defendants made the calls at issue were merely conclusory without supporting facts); *Childress*, 2018 WL 4684209, at *3 (finding plaintiff's conclusory allegations that the subject calls were made by "Defendant's robot machine" insufficient); *Nelums,* 2023 WL 5607594, at *8 (dismissing where complaint omitted supporting factual allegations that the defendant itself "actually sent the [subject] text messages"); *Aaronson v. CHW Grp., Inc.*, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019) (dismissing TCPA claim on this basis, holding "at the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that [physically] made the calls" at issue); *Woodard v. Health Ins. All.,* 2024 WL 942629, at *3 (N.D. Ill. Mar. 5, 2024) (dismissing on this basis, holding that all "TCPA actions must allege some facts which are distinguishable from the statutory language of the TCPA itself to state a claim and survive dismissal"); *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *5 (W.D. Wash. Mar. 27, 2023) (dismissing DNC claim on this basis, noting that the "[p]laintiffs have not pleaded any *facts* supporting their inference that [defendant] physically dialed the calls to four of the individual plaintiffs" (emphasis in original)).

In short, "[a]s a party to these calls, Plaintiff 'should be able to provide greater detail" to support a direct liability theory. *Matthews v. Senior Life Ins. Co.,* 2025 WL 1181789, at *3 (E.D. Va. Apr. 22, 2025) (quoting *Scruggs v. CHW Grp., Inc.,* 2020 WL 9348208, at *6 (E.D. Va. Nov. 12, 2020)) (dismissing on this basis). *See also Bank v. Alleviate Tax, LLC*, 2024 WL 1332635, at *5, n.6 (E.D.N.Y. Mar. 28, 2024) (ruling similarly and dismissing).

7

Here, Plaintiff does not come even close to plausibly alleging a direct TCPA liability theory. At most, he vaguely avers he received two calls from different numbers, where the callers somehow "identified themselves as calling from 'Pathlock'" and "sought to solicit [him] to purchase Pathlock's cybersecurity services and products." Dkt. 1, ¶¶ 19-27. Such threadbare allegations, without more, are insufficient to avoid dismissal. *See, e.g., Escano, Metzler* and *Bennett, supra*; *Wick v. Twilio Inc.,* 2017 WL 2964855, at *3 (W.D. Wash. July 12, 2017) (dismissing: "merely offering a good or service for sale does not mean that a retailer [physically] initiates the marketing calls for that product" for direct TCPA liability).

In fact, federal district courts have widely recognized that even a call allegedly identifying the defendant by name or its products and/or originating "from" the defendant in some fashion—which is <u>all</u> Plaintiff alleges here at best (*see* Dkt. 1, ¶¶ 20, 22)—does <u>not</u> allow for a plausible inference that the defendant itself physically made or initiated it for direct TCPA liability purposes, standing alone. *See*, *e.g.*, *Murray v. Choice Energy, LLC*, 2015 WL 4204398, at *2 (S.D. Ohio July 10, 2015) (dismissing on this basis, even though plaintiff was "informed that the call was from Choice Energy," where there were "no factual allegations … that Choice Energy had any active role or involvement in [physically] placing the calls"); *Scruggs,* 2020 WL 9348208, at *10 ("The sole factual allegation linking [the defendant] to the calls is that the caller identified himself as 'associated with [the defendant]'" which is "insufficient under the *Iqbal* pleading standards" to plausibly allege a direct TCPA liability theory.) (citing *Aaronson*). Together, these authorities and many others show the alleged content of a call (by itself) is <u>not</u> indicative of, and thus is insufficient to plausibly allege, direct TCPA liability. Yet, that is plainly all Plaintiff is relying on for his claim.

8

Rather, Plaintiff's Complaint is perhaps more notable for what facts it omits on this front. For example, Plaintiff does not plausibly allege, nor state even in a conclusory fashion, that (i) his Caller ID identified "Pathlock"; (ii) the persons with whom he spoke identified themselves as a Pathlock "employee"; (iii) Pathlock owns or uses the numbers used to call him; or (iv) he called those numbers and reached Pathlock. Such facts might have supported a direct TCPA liability theory, if properly pled. *See, e.g., Aaronson,* 2019 WL 8953349, at *2; *Rogers,* 2023 WL 2646468, at *5; *Doyle v. GoHealth, LLC*, 2023 WL 3984951, at *4–6 (D.N.J. Mar. 30, 2023); *Smith v. Direct Bldg. Supplies, LLC*, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021); *Bank v. Vivint Solar, Inc.*, 2019 WL 2280731, at *2 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted*, 2019 WL 1306064 (Mar. 22, 2019) (each dismissing complaints lacking such details). Their omission here dooms Plaintiff's claim.

Moreover, it is obvious that Plaintiff has merely adopted a flawed "either/or" pleading approach in this case that countless other federal courts have found to be insufficient to withstand dismissal on this basis, concluding that "Defendant ***and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf*** violated the TCPA by causing multiple telephone solicitation calls to be initiated to Plaintiff" and the putative class members. Dkt. 1, ¶ 39 (emphasis added). *See also id.* ¶¶ 30, 31, 41 (similar allegations suggesting third party involvement). In other words, what Plaintiff is really alleging (or concluding) in this case, at bottom, is that either Pathlock itself placed the calls or that countless unidentified third party "agents" or the like did. However, federal courts have found that such equivocating allegations are "woefully insufficient to state a claim of ***any sort***." *Maldonado-Rodriguez v. Citibank, N.A.*, 2013 WL 350814, at *5 (N.D. Ind. Jan. 28,

9

2013) (emphasis added). Such is particularly true when it comes to pleading plausible direct TCPA liability claims, as the many decisions cited herein (among many others) dismissing similarly-defective complaints at the pleadings stage on this basis show.[4] In the end, such obviously directly "[c]ontradictory allegations" like Plaintiff's above "are inherently implausible, and [thus] fail to comply with Rule 8, *Twombly*, and *Iqbal*" and cannot survive dismissal under Rule 12(b)(6) in any federal case, and especially not in a TCPA case. *Hernandez v. Select Portfolio, Inc.*, 2015 WL 3914741, at *10 (C.D. Cal. June 25, 2015).

In sum, the foregoing authorities reflect the widely-accepted analytical approach to evaluating the facial sufficiency of TCPA liability theories under Rule 12(b)(6) that federal courts have employed for decades. Courts take this approach as it is logical and in accord with the edicts of *Iqbal*/*Twombly*, and it is in tacit recognition that companies often hire third party vendors to make calls for them. For example, a call made by a third party for a defendant would naturally identify the defendant by name and sell its products (which is why the vendor was hired), and thus may have originated "from" the defendant in a technical sense—which again is all Plaintiff concludes happened here. *See* Dkt. 1, ¶¶ 20, 22, 39. But such a call is not physically placed by the **defendant itself directly** to the

---

[4] *See also Brown v. Nano Hearing Tech OPCP, LLC*, 2024 WL 3367536, at *3 (S.D. Cal. July 9, 2024) (dismissing on this basis where plaintiff concluded the caller's "numbers belonged to [defendant] Nano or Nano's agent," without pleading plausible facts suggesting the defendant physically placed them); *Dobronski v. Russo*, 2024 WL 4363118, at *5 (E.D. Mich. Sept. 30, 2024) (holding that a plaintiff "simply alleg[ing] that 'Defendants or Defendants' agent' initiated calls" to him was insufficient to plead a theory of TCPA liability); *Doyle*, 2023 WL 3984951, at *4–6 (dismissing and holding allegations that the alleged calls were "from Defendant, its employees and/or agents" insufficient for directly liability, without more); *Katz v. Caliber Home Loans, Inc.*, 2023 WL 5311488, at *3 (N.D. Tex. Aug. 17, 2023) (dismissing on this basis where the plaintiff merely alleged an "unidentified caller 'offered the Defendant's services from the Caliber Home Loan Mortgage Refinance Team'").

10

plaintiff, which is the cornerstone of direct TCPA liability and what counts here. Logically and as a matter of law, there must be sufficient facts pled showing a "direct connection between a person or entity and the making of a call" for direct TCPA liability to attach. 30 FCC Rcd. at 7980. Plaintiff alleges none here, which warrants dismissal on this basis.

Nor did Plaintiff plausibly allege vicarious TCPA liability. "[A] defendant [may be] vicariously liable for violations of the TCPA where common law principles of agency would impose it." *Nelums, LLC*, 2023 WL 5607594, at *8 (citing *Childress*, 2018 WL 4684209, at *3 and *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018)). However, Plaintiff must allege **some** facts regarding the relationship between an alleged principal and agent "and cannot simply allege general control [of an agent] in a vacuum." *Id*. (emphasis added). Here, other than using a few legal buzzwords, Plaintiff does not allege any facts supporting an inference that Pathlock was in a common law agency relationship with any third party. Nor does he allege Pathlock had "control" over the "manner and means" of any third party caller's call campaign, which is the accepted touchstone of vicarious liability in a TCPA case and must also be adequately pled. *See, e.g., Cunningham v. Daybreak Solar Power, LLC*, 2023 WL 3985245, at *3; *Rogers*, 2023 WL 2646468, at *6; *Childress*, 2018 WL 4684209, at *3; *Nelums*, LLC, 2023 WL 5607594, at *8 (all dismissing on this basis).[5] Therefore, the Complaint should also be dismissed on vicarious TCPA liability grounds.

---

[5] That Pathlock's name or its products were allegedly mentioned by the callers does not support an inference of such control, either. *See, e.g., Hale v. Teledoc Health, Inc.*, 2021 WL 1163925, at *4 (S.D.N.Y. Mar. 25, 2021) (dismissing on vicarious TCPA liability grounds, holding: "[T]he inclusion of [defendant's] services in [the telemarketer's] insurance bundle, alone, is insufficient to permit even a circumstantial inference that [the telemarketer] called plaintiffs at [the defendant's direction or subject to [its] control."); *DeClements v. RE/MAX LLC*, 2020 WL 9259326, at *4 (D. Colo. Oct. 13, 2020) (ruling similarly and dismissing).

11

All told, Plaintiff's "either/or" approach to pleading TCPA liability has failed time and time again to withstand dismissal under Rule 12(b)(6) in federal courts across the Tenth Circuit and nationally. It fails again here. As is evident, Plaintiff is just throwing darts at a proverbial dartboard, hoping to limp his way into discovery and hit a viable liability theory eventually, not pleading facts. Federal law does not permit this. Neither should this Court. Thus, his entire Complaint should be dismissed on direct and vicarious liability grounds.

### B.  The Complaint Should Also Be Dismissed Under Rule 12(b)(6) Because It Lacks Facts Supporting Other Essential Elements of Plaintiff's Claim.

The Complaint is also subject to dismissal under Rule 12(b)(6) because Plaintiff failed to plead facts supporting at least two other essential elements of a TCPA DNC claim.

**First**, the TCPA's DNC provisions, on their face, apply only to "***residential*** telephone subscribers." 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2) (emphasis added). *See also Cunningham v. Politi,* 2019 WL 2519568, at *4 (E.D. Tex. Apr. 30, 2019), *report and rec. adopted,* 2019 WL 2524736 (June 19, 2019) (dismissing DNC claim under Rule 12(b)(6), and noting: "The private right of action created by … § 227(c)(5) is accordingly limited to redress for violations of the regulations that concern residential telephone subscribers.").

Along these lines, federal courts have widely recognized that plaintiffs hoping to bring TCPA DNC claims must allege sufficient non-conclusory facts showing the subject phone number (*i.e.*, the number at which they received the alleged calls) is ***actually used*** for "residential" purposes, or face dismissal under Rule 12(b)(6). *See, e.g., Hicks*, 2020 WL 9261758, at *5; *Cunningham v. Politi,* 2019 WL 2519568, at *4; *Cunningham v. McDonald,* 2018 WL 6737418, at *2 (M.D. Tenn. Nov. 5, 2018), *report and rec. adopted,* 2018 WL 6198417 (Nov. 28, 2018); *Kemen v. Cincinnati Bell Tel. Co., Inc.*, 2023 WL 361136, at *5

12

(S.D. Ohio Jan. 23, 2023); *Gillam v. Reliance First Capital, LLC,* 2023 WL 2163775, at *4 (E.D.N.Y. Feb. 22, 2023); *Rogers v. Assurance*, 2023 WL 2646468, at *4 (all dismissing).

Of course, merely parroting the statute does not suffice to avoid dismissal on this point, either. *See, e.g., Hicks*, 2020 WL 9261758, at *5 ("Plaintiff argues at length that cellular phone numbers are eligible for listing on the Do Not Call registry … but his argument never returns to the facts of *this* case or the use of his phone.") (emphasis in original); *Morgan v. U.S. Xpress, Inc.,* 2018 WL 3580775, at *2 (W.D. Va. July 25, 2018) (dismissing similar claim applying only to "residential" lines, holding the plaintiff's characterizations that her number is a "residential" line "are not factual allegations, but legal terms drawn from the operative statute" and need to be accepted as true for purposes of a Rule 12(b)(6) motion).

Applying the foregoing authorities also supports dismissal of Plaintiff's entire Complaint. Like in the cases above, Plaintiff here just regurgitates the statutory text and concludes that the subject number "is a cellular telephone number used for personal residential purposes" that is "not associated with any business." Dkt. 1, ¶¶ 13-15. Such bald allegations are insufficient, as many courts have found. *See, e.g., Morgan*, *supra*; *Hicks*, 2020 WL 9261758, at *5 (dismissing DNC claim, where plaintiff concluded his number was "not associated with a business and is for personal use"); *Gillam*, 2023 WL 2163775, at *4 (rejecting similar allegations).[6] As the *Rogers* court noted when dismissing a similarly-defective claim, "[t]hese are facts that are easily within the knowledge of [p]laintiffs and can

---

[6] *See also Cunningham v. Politi*, 2019 WL 2519702, at *4 (dismissing, finding conclusory allegations number was used "for personal, family, and household" purposes did not necessarily mean it was a "residential" line); *Mattson v. Quicken Loans Inc.*, 2019 WL 7630856, at *6 (D. Or. Nov. 7, 2019) (noting that "use of the subject number for personal calls does not automatically transform it into a residential line for purposes of the TCPA.").

13

be pleaded to remove any doubt about … whether [their] numbers are for residential use." 2023 WL 2646468, at *4. Plaintiff's failure to plead such facts is further fatal to his claim.

**Second**, Section 227(c) of the TCPA, also on this face, "relates solely to [telephone] solicitation calls." *Warnick v. Dish Network LLC,* 301 F.R.D. 551, 558 fn. 3 (D. Colo. 2014). *See also* 47 C.F.R. § 64.1200(c)(2). Thus, to survive dismissal here, Plaintiff must also plead sufficient non-conclusory facts suggesting his receipt of a "telephone solicitation" under the TCPA. *Id.*; *see also* 47 C.F.R. § 64.1200(f)(15) (defining "telephone solicitation").

However, mere conclusions and speculation on this element are likewise not enough to pass muster under *Iqbal/Twombly* and their progeny. Rather, applying federal pleading standards, courts have frequently dismissed DNC claims under Rule 12(b)(6) where the plaintiff fails to plead sufficient actual facts, beyond bald conclusions or simply parroting the statute, supporting an inference that a call they received fits the statutory definition of a "telephone solicitation." *See*, *e.g., Bell v. Hawx Servs., LLC,* 2025 WL 2533371*,* at *3–4 (E.D. Cal. Sept. 3, 2025) (citing, *inter alia, Andersen v. Nexa Mortg., LLC*, 2024 WL 3762098, at *2 (C.D. Cal. Aug. 12, 2024); *Eggleston v. Reward Zone USA LLC,* 2022 WL 886094, at *6–7 (C.D. Cal. Jan. 28, 2022)); *Weingrad v. Top Healthcare Options Ins. Agency Co*., 2024 WL 4228149, at *3–4 (E.D. Pa. Sept. 17, 2024); *Katz v. CrossCountry Mortg., LLC*, 2022 WL 16950481, at *6 (N.D. Ohio Nov. 15, 2022); *Gillam*, 2023 WL 2163775, at *3 (each dismissing on this basis). The Complaint at bar shares the same flaw.

In fact, Plaintiff provides virtually no call content and at most states that, "[o]n both calls, Defendant's representative sought to solicit the Plaintiff to purchase Pathlock's cybersecurity services and products." Dkt. 1, ¶ 22. *See also id*. ¶ 26 (similar allegations).

Myriad courts have found such conclusory labels are inadequate to support a plausible inference the alleged calls constituted "telephone solicitations" under the TCPA's DNC rules, without more. *See, e.g., Gillam*, 2023 WL 2163775, at *3 (dismissing where plaintiff "merely conclude[d], without any factual support, that [defendant's] agent 'solicit[ed] refinancing products'"); *Bell,* 2025 WL 2533371*,* at *4 ("While Plaintiff is not required to provide a line-by-line transcript of the telephone calls in question, he is still required to provide more than a conclusory statement that Defendant attempted to solicit him."); *Eggleston,* 2022 WL 886094, at *7 ("Plaintiff simply relies on conclusory labels such as 'advertisement' and 'promotion' without any supporting factual detail. This falls short of Plaintiff's burden to plead sufficient factual matter to state a plausible claim" under Section 227(c).); *Weingrad,* 2024 WL 4228149, at *3–4 (dismissing where plaintiff "only plead[ed] [that] 'the purpose of the [subject] call was to sell the Plaintiff health insurance" and did "not plead a statutory violation without 'further factual enhancement'" as required by federal pleading standards). Plaintiff's Complaint should be dismissed for this additional reason.

## IV. CONCLUSION

For all these reasons, Plaintiff's Complaint should be dismissed in its entirety.

Dated: September 29, 2025

Respectfully submitted,

By: /s/ *A. Paul Heeringa*

A. Paul Heeringa
**MANATT, PHELPS & PHILLIPS, LLP**
151 N. Franklin Street, Suite 2600
Chicago, IL 60606
Telephone: (312) 529-6300
Email: pheeringa@manatt.com

*Counsel for Defendant*

15

## CERTIFICATE OF CONFERRAL

Pursuant to this Court's Uniform Civil Practice Standards, the undersigned certifies that counsel for Defendant conferred with counsel for Plaintiff, Anthony Paronich, regarding the foregoing motion. Mr. Paronich indicated that Plaintiff intends to oppose the motion.

*/s/ A. Paul Heeringa*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on, September 29, 2025, a true copy of the foregoing was filed electronically using the Court's CM/ECF system, to be served via operation of the Court's electronic filing system upon all counsel of record.

*/s/ A. Paul Heeringa*