— **EXHIBIT C** —

# Vallesillo v. Money Tree Merch. Servs. Corp.

United States District Court for the District of Nebraska

May 23, 2024, Decided; May 23, 2024, Filed

8:23-CV-536

**Reporter**
2024 U.S. Dist. LEXIS 97600 *

ALEJANDRO VALLESILLO, individually and on behalf of all others similarly situated, Plaintiff, vs. MONEY TREE MERCHANT SERVICES CORP., Defendant.

**Subsequent History:** Dismissed by Vallesillo v. Money Tree Merch. Servs. Corp., 2024 U.S. Dist. LEXIS 185875 (D. Neb., Oct. 11, 2024)

**Counsel:  [*1]** For Alejandro Vallesillo, individually, and on behalf of all others similarly situated, Plaintiff: Mark L. Javitch, JAVITCH LAW FIRM, San Mateo, CA USA.

For Money Tree Merchant Services Corp., a New York Corporation, Defendant: Gerald L. Maatman, Jr., Jennifer A. Riley, DUANE, MORRIS AW FIRM - CHICAGO, Chicago, IL USA; Emilee N. Crowther, DUANE, MORRIS LAW FIRM - AUSTIN, Austin, TX USA.

**Judges:** Brian C. Buescher, United States District Judge.

**Opinion by:** Brian C. Buescher

## Opinion

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS**

Plaintiff Alejandro Vallesillo has brought a class action suit against defendant Money Tree Merchant Services Corp., alleging violations of the Telephone Consumer Protection Act (TCPA). Filing 17. Presently before the Court is Money Tree's Motion to Dismiss Vallesillo's Amended Complaint for lack of subject matter jurisdiction or, alternatively, for failure to state a claim. Filing 20. For the reasons below, the Court denies the Motion to Dismiss.

**I. BACKGROUND**

**A. Factual Background**

*1. Factual Allegations in the Complaint*

The Court considers the following nonconclusory allegations as true for the purposes of ruling on this motion. *See Bauer v. AGA Serv. Co.*, 25 F.4th 587, 589 (8th Cir. 2022) (quoting *Pietoso, Inc. v. Republic Servs., Inc.*, 4 F.4th 620, 622 (8th Cir. 2021)). Plaintiff Vallesillo is a resident of Omaha, Nebraska. Filing 17 at 2 (¶ 9). Defendant **[*2]** Money Tree is a New York Corporation. Filing 17 at 3 (¶ 10). Money Tree sent plaintiff Vallesillo unsolicited text messages advertising cash advances, which Money Tree offers. Filing 17 at 3 (¶¶ 14-15). Money Tree did not receive Vallesillo's consent to send these messages. Filing 17 at 3 (¶ 16). After receiving multiple messages, Vallesillo "eventually responded to the text messages" to "find out who was calling." Filing 17 at 4 (¶ 25).

Money Tree sent these unsolicited messages to what Vallesillo describes as a residential phone number on his personal cell phone, which he uses to communicate for personal reasons with his friends and family. Filing 17 at 3 (¶ 17-18, 20). This phone number is registered on the Federal Do-Not-Call list and has been so since December 2021. Filing 17 at 4 (¶ 22). Vallesillo has no other personal phone numbers, but he "maintains a separate phone number for business purposes so that his customers do not call his personal cell phone for business purposes." Filing 17 at 3-4 (¶¶ 19, 21). Vallesillo alleges that these "texts caused annoyance, intrusion on privacy and seclusion, and wasted cell phone battery life and time." Filing 17 at 4 (¶ 29).

### 2. Additional **[*3]** Factual Allegations Provided by Money Tree

Money Tree submitted several exhibits along with its Motion to Dismiss. Filing 21-1. Money Tree submitted a copy of messages exchanged between it and Vallesillo which shows there were at least six messages sent by Money Tree between September 14, 2023, and October 3, 2023, before Vallesillo replied. Filing 21-3. Money Tree also submitted a screenshot of the Commercial and Government Entity Program website, operated by the Department of Defense, which shows that Vallesillo's phone number was the number associated with a registered business entity, Raging Bull Consulting, LLC. Filing 21-6. Finally, Money Tree submitted PACER records of federal court filings by Vallesillo and his attorney. Filing 21-7; Filing 21-8.

### B. Procedural Background

Vallesillo filed his original Class Action Complaint on December 12, 2023. Filing 1. Money Tree moved to dismiss that Complaint on February 16, 2024. Filing 15. Vallesillo then filed an Amended Class Action Complaint, the operative pleading, on February 22, 2024. Filing 17. The Amended Complaint contains two causes of action under the TCPA: "Violation of 47 U.S.C. § 227(c)" and "Violation of [47 C.F.R.] § 64.1200(d)(1)." Filing 17 at 7-9 (¶¶ 38-52). Vallesillo **[*4]** seeks class certification, declaratory judgment, injunctive relief, and damages. Filing 17 at 9. The Court then denied without prejudice to reassertion Money Tree's Motion to Dismiss the original Complaint as moot in light of the Amended Complaint. Filing 19. On March 5, 2024, Money Tree filed the Motion to Dismiss that is presently before the Court. Filing 20.

## II. ANALYSIS

### A. Preliminary Matters

The Court begins with two preliminary matters. First, Vallesillo's second cause of action is inartfully pleaded. Unlike his first cause of action, he purported to bring his claim under 47 C.F.R. 64.1200(d)(1), a TCPA regulation, rather than 47 U.S.C. § 227(c), which provides a private cause of action for violations of TCPA regulations. Filing 17 at 8 (¶¶ 45-52). Because the Court must "draw[ ] all reasonable inferences in favor of the nonmovant,'" *Bauer*, 25 F.4th at 589, the Court considers Vallesillo's second claim to assert a cause of action under 47 U.S.C. § 227(c) for a violation of 47 C.F.R. 64.1200(d)(1).

Second, Money Tree asks the Court to dismiss Vallesillo's Amended Complaint because he and his counsel are "serial litigants." Filing 21 at 8-9. Money Tree has not identified nor has the Court found any controlling precedent that suggests the Court may dismiss a complaint due to a plaintiff's **[*5]** or plaintiff's counsel's engagement in multiple litigations under the same statute. Accordingly, Money Tree's argument fails.

### B. The Court Has Subject Matter Jurisdiction

*1. Rule 12(b)(1) Standards*

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for a pre-answer motion to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The Eighth Circuit Court of Appeals has explained that on a Rule 12(b)(1) motion,

> The plaintiff bears "the burden of proving the existence of subject matter jurisdiction," and we may look at materials "outside the pleadings" in conducting our review. [*Herden v. United States*, 726 F.3d 1042, 1046 (8th Cir. 2013) (en banc)] (quoting *Green Acres Enters., Inc. v. United States*, 418 F.3d 852, 856 (8th Cir. 2005)). Because of the "unique nature of the jurisdictional question," *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990) (citation omitted), it is the court's duty to "decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue," *id.* at 730. As such, if the court's inquiry extends beyond the pleadings, it is not necessary to apply Rule 56 summary judgment standards. *Id.* at 729. Rather, the court may receive evidence via "any rational mode of inquiry," and the parties may "request an evidentiary hearing." *Id.* at 730 (quoting *Crawford v. United States*, 796 F.2d 924, 928 (7th Cir. 1986)). Ultimately, the court must rule upon "the jurisdictional issue [unless it] is 'so bound up with the merits that a full trial on the merits may be necessary to resolve the **[*6]** issue.'" *Id.* (quoting *Crawford*, 796 F.2d at 928).

*Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019); *Am. Fam. Mut. Ins. Co. v. Vein Centers for Excellence, Inc.*, 912 F.3d 1076, 1081 (8th Cir. 2019) ("[A] motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) raises a factual challenge to the court's jurisdiction, and courts may look to evidence outside the pleadings and make factual findings." (citing *Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018)).

The *Buckler* decision suggests that a challenge to subject matter jurisdiction pursuant to Rule 12(b)(1) is always "factual," but "facial" challenges are also possible:

> In deciding a motion under Rule 12(b)(1), the district court must distinguish between a facial attack—where it looks only to the face of the pleadings—and a factual attack—where it may consider matters outside the pleadings. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir.1990). In a factual attack, the "non-moving party does not have the benefit of 12(b)(6) safeguards." *Id.* If the jurisdictional issue is "bound up" with the merits of the case, the district court may "decide whether to evaluate the evidence under the summary judgment standard." *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir.2018). This court is bound by the district court's characterization of the Rule 12(b)(1) motion. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir.2016) ("The method in which the district court resolves a Rule 12(b)(1) motion—that is, whether the district court treats the motion as a facial attack or a factual attack—obliges us to follow the same approach.").

*Croyle by & through Croyle v. United States*, 908 F.3d 377, 380-81 (8th Cir. 2018).

In this case, Money Tree does not expressly indicate **[*7]** whether its Rule 12(b)(1) challenge to subject matter jurisdiction is facial or factual. *See generally* Filing 21; Filing 24. In its Reply Brief, Money Tree states, "Plaintiff's Amended Complaint should be dismissed because he fails, under both a facial and factual attack analysis, to plead sufficient facts to demonstrate that his number is a residential number." Filing 24 at 4. However, Money Tree references matters outside the pleadings in both the Brief supporting dismissal and the Reply Brief. Filing 21 at 5; Filing 24 at 4. Accordingly, the court concludes that Defendants' challenge to subject matter jurisdiction is "factual." *Croyle*, 908 F.3d at 380-81 (explaining that the appellate court is bound by the district court's characterization of the motion as a facial or factual challenge). Under these circumstances, Plaintiffs are not entitled to Rule 12(b)(6) "safeguards." *Croyle*, 908 F.3d at 380.

*2. Standing Standards*

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Sch. of the Ozarks, Inc. v. Biden*, 41 F.4th 992, 997 (8th Cir. 2022) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341, 126 S. Ct. 1854, 164 L. Ed. 2d 589 (2006)). "Establishing subject matter jurisdiction requires a party to show it has standing to sue." *Quiles v. Union Pac. R.R. Co., Inc.*, 4 F.4th 598, 603 (8th Cir. 2021) (citing *Young Am. Corp. v. Affiliated Computer Servs. (ACS), Inc.*, 424 F.3d 840, 843 (8th Cir. 2005)). Thus, "standing is a jurisdictional **[*8]** prerequisite that must be resolved before reaching the merits of a suit." *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007). "To establish standing to sue in federal court, a plaintiff 'must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *McNaught v. Nolen*, 76 F.4th 764, 768-69 (8th Cir. 2023) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016)). "An injury in fact is the invasion of a legally protected interest which is (1) concrete and particularized and (2) actual or imminent." *Quiles*, 4 F.4th at 603 (internal citations omitted). Causation requires a "causal connection

between the alleged injury and the conduct being challenged." *Id.* "Finally, the party must show the injury can be redressed or cured by a favorable decision issued by a court." *Id.* The Court must "accept[ ] the material allegations in the complaint as true and draw[ ] all inferences in [the] plaintiffs' favor." *In re SuperValu, Inc., Customer Data Sec. Breach Litig.*, 870 F.3d 763, 768 (8th Cir. 2017).

### 3. Vallesillo Has Standing to Assert His TCPA Claim

Money Tree argues that Vallesillo lacks standing because he has not suffered a concrete injury in fact. Filing 21 at 3-6. Money Tree explains that Vallesillo "does not plead facts sufficient to demonstrate that his phone number (ending in 8312) is a residential number," which Money Tree **[*9]** argues deprives him of standing. Filing 21 at 4. Money Tree also contends that Vallesillo "cannot allege a viable injury for Money Tree's alleged failure to maintain an internal policy because he never asked Money Tree to place him on Money Tree's internal do not call list." Filing 21 at 6. It then argues that "even if Money Tree did not maintain an internal do not call list (which it does), because 'Plaintiff cannot allege a way . . . in which he would appear on [Money Tree's] internal do-not call list, [ ] his injury cannot be traced to [Money Tree's alleged] failure to maintain one.'" Filing 21 at 6 (citing *Thompson v. Genesco, Inc.*, No. 23-292, 2024 U.S. Dist. LEXIS 3203, 2024 WL 81187, at *5 (E.D. Mo. Jan. 8, 2024)).

In response, Vallesillo argues that he has standing because he alleged he "incurred statutory and actual damages in the form of annoyance, intrusion on privacy and seclusion, and wasted time and cellular battery life." Filing 23 at 9. Vallesillo further contends that Money Tree's evidence that Vallesillo's phone number is registered as a business number does not deprive him of an injury in fact under the TCPA because Money Tree "has no personal knowledge of Plaintiff's use of his cell phone as a personal cell phone." Filing 23 at 8. In reply, Money Tree argues that the "Amended **[*10]** Complaint should be dismissed because [Vallesillo] fails, under both a facial and factual attack analysis, to plead sufficient facts to demonstrate that his number is a residential number." Filing 24 at 4.

The Eighth Circuit has expressly determined that violations of the TCPA can confer standing on plaintiffs. *Golan v. FreeEats.com, Inc.*, 930 F.3d 950 (8th Cir. 2019). The Eighth Circuit explained,

> The harm to be remedied by the TCPA was the unwanted intrusion and nuisance of unsolicited telemarketing phone calls and fax advertisements. The harm here was the receipt of two telemarketing messages without prior consent. These harms bear a close relationship to the types of harms traditionally remedied by tort law, particularly the law of nuisance. It is not dispositive whether unsolicited telephone calls are actually actionable under any common law tort because Congress may elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law. Nor does it matter that the harm suffered here was minimal; in the standing analysis we consider the nature or type of the harm, not its extent. We thus conclude the Golans suffered a concrete injury and have standing.

*Golan*, 930 F.3d at 959 (alterations, citations, and quotations **[*11]** omitted). The harm here is substantially the same: multiple unsolicited text messages sent to Vallesillo's phone. Filing 17 at 7 (¶ 40). These unsolicited messages "bear a close relationship to the types of harms traditionally remedied by tort law, particularly the law of nuisance." *Golan*, 930 F.3d at 959. Accordingly, Vallesillo "suffered a concrete injury and ha[s] standing." *Id.*

In addition, Money Tree's arguments that Vallesillo's claims are inadequate—either due to his phone number being registered as a business line or because he was not on Money Tree's internal Do-Not-Call list—do not bear on subject matter jurisdiction. Because this is a challenge to subject matter jurisdiction, "[d]ismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy' or 'where such a claim is wholly insubstantial and frivolous.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) (citation omitted). As discussed below, Vallesillo's TCPA claim is not "wholly insubstantial and frivolous," but is instead plausible. Thus, Money Tree's Motion to Dismiss **[*12]** for lack of subject matter jurisdiction is denied.

## C. Vallesillo Stated Plausible TCPA Claims

*1. The Parties' Arguments*

Vallesillo alleges that he and members of his putative class are "are registered on the Federal [Do Not Call (DNC)] Registry." Filing 17 at 7 (¶ 39). Despite his presence on the registry, Vallesillo alleges that Money Tree "sent unsolicited texts [to] Plaintiff's and the Class members' telephones without having their prior express written consent to do so," Filing 17 at 7 (¶ 40), in violation of the TCPA.

Money Tree's theory for its Rule 12(b)(6) Motion to Dismiss for failure to state a claim is that Vallesillo "consented to the communications from Money Tree, and never informed Money Tree or otherwise pled in his complaint that the number Money Tree contacted was a residential number." Filing 21 at 7-8; *see also* Filing 24 at 6 ("[S]ince Plaintiff does not plead facts sufficient to demonstrate that his number is a residential (and not a business, number, Plaintiff fails to state a claim upon which relief can be granted under 47 U.S.C. § 227(c)."). Contradicting Money Tree's allegations, the Amended Complaint states that Vallesillo received "unsolicited text messages to his personal cell phone." Filing **[*13]** 17 at 4 (¶ 23). In support of its arguments, Money Tree cites matters outside the pleadings, including an allegedly "true and correct copy of two pages of text message communications with" Vallesillo. Filing 21 at 7 (citing Filing 21-4 at 2-3). Money Tree argues that "the Court may consider all of the documents and affidavits attached to Money Tree's Motion to Dismiss in its 12(b)(6) analysis." Filing 24 at 6.

In response, Vallesillo argues that "Money Tree's 'evidence' is improper and should be stricken or not considered" on its Rule 12(b)(6) Motion. Filing 23 at 3. He further contends that both of his claims are plausible and survive dismissal. Filing 23 at 4-6. In reply, Money Tree argues that its

evidence can be considered on the Rule 12(b)(6) Motion. Filing 24 at 5-6. It further argues that this evidence shows that Vallesillo's phone number is registered as a business entity and is not residential, meaning he cannot state a claim under the TCPA.

*2. Applicable Standards*

a. Rule 12(b)(6) Standards

The typical grounds for Rule 12(b)(6) motions are the insufficiency of the factual allegations offered to state claims. To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." **[\*14]** Fed. R. Civ. P. 8(a)(2). Nevertheless, "'threadbare recitals of the elements of a cause of action' cannot survive a [Rule 12(b)(6)] motion to dismiss." *Du Bois v. Bd. of Regents of Univ. of Minnesota*, 987 F.3d 1199, 1205 (8th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). Instead, as the Eighth Circuit Court of Appeals has explained, "A claim survives a Rule 12(b)(6) motion to dismiss only if the complaint's nonconclusory allegations, accepted as true, make it not just 'conceivable' but 'plausible' that the defendant is liable." *Mitchell v. Morton Cty.*, 28 F.4th 888, 895 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 680-83). To put it another way, a court "must determine whether a plaintiff's complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Far E. Aluminium Works Co. v. Viracon, Inc.*, 27 F.4th 1361, 1364 (8th Cir. 2022) (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)). Thus, "[a] claim is plausible when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Christopherson v. Bushner*, 33 F.4th 495, 499 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678). In contrast, "'[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility." *Id.* (internal quotation marks and citations omitted). The Eighth Circuit Court of Appeals has cautioned that "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, **[\*15]** is plausible." *Braden*, 588 F.3d at 594.

In ruling on a Rule 12(b)(6) motion, a court must "accept 'the facts alleged in the complaint as true and draw[ ] all reasonable inferences in favor of the nonmovant.'" *Bauer*, 25 F.4th at 589. On the other hand, "[m]ere conclusory statements and factual allegations lacking enough specificity to raise a right to relief above the speculative level are insufficient to support a reasonable inference that the defendant is liable." *Richardson v. BNSF Ry. Co.*, 2 F.4th 1063, 1068 (8th Cir. 2021) (internal quotation marks and citations omitted). A court also need not accept a pleader's "legal conclusions drawn from the facts." *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 755 (8th Cir. 2021).

Rule 12(b)(6) also permits dismissal when a claim is not cognizable under applicable law. *See, e.g., Couzens v. Donohue*, 854 F.3d 508, 517 (8th Cir. 2017) (dismissal was appropriate where Missouri did not recognize a claim for false light invasion of privacy); *Thomas v. Bd. of Regents of Univ. of Neb.*, No. 4:20CV3081, 2022 U.S. Dist. LEXIS 85177, 2022 WL 1491102, at \*18 (D. Neb. May 11, 2022) (agreeing with defendant that the plaintiffs had failed to state a claim, because a disparate-impact claim is not cognizable under the Equal Protection Clause);

*Freeney v. Galvin*, No. 8:19CV557, 2020 U.S. Dist. LEXIS 6446, 2020 WL 229996, at *2 (D. Neb. Jan. 15, 2020) (finding the plaintiff failed to state a § 1983 claim against the manager of his private place of employment because such a claim is not cognizable where a private person is not a state actor or engaged in joint action with the state or its agents). In such cases, the plaintiff failed to state a claim that was legally cognizable **[*16]** as opposed to factually plausible.

Under Rule 12(b)(6), Eighth Circuit "precedent permits consideration of materials necessarily embraced by the pleadings, including exhibits attached to the complaint and matters of public record. Such evidence may not, however, be viewed for the truth of the matters asserted." *LeMay v. Mays*, 18 F.4th 283, 289 (8th Cir. 2021) (cleaned up). In other words, the Court can "consider the [evidence's] existence" but not "its narrative as truth." *Id.* Conversely, Rule 12(d) provides,

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). The Eighth Circuit "reviews a district court's decision to convert a Rule 12(b)(6) motion to dismiss into a motion for summary judgment for abuse of discretion." *Solomon v. Petray*, 795 F.3d 777, 786 (8th Cir. 2015) (citation omitted). "[M]atters outside the pleadings" include "any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings." *Hamm v. Rhone-Poulenc Rorer Pharms. Inc.*, 187 F.3d 941, 948 (8th Cir. 1999) (citation omitted).

b. TCPA Violation Standards

The TCPA provides that "the Commission shall **[*17]** initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). The TCPA further provides a private right of action, as follows:

> A person who has received more than one telephone call[1] within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State--
> (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,
> (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or
> (C) both such actions.

---

[1] TCPA regulations provide that "[t]he rules set forth in paragraph (c) [ ] of this section are applicable to any person or entity making telephone solicitations or telemarketing calls or text messages." 47 C.F.R. § 64.1200(a)(9). Thus, it is immaterial whether a plaintiff received a "telephone call" as provided for by the statute or a text message.

47 U.S.C. § 227(c)(5). Thus, to state a claim under the TCPA, a plaintiff must plausibly allege he or she received more than one phone solicitation from the same entity within a one-year period to a residential phone number and that the solicitations were in violation of a TCPA regulation.

*3. Considering Money Tree's Evidence Beyond the Pleadings Is Appropriate Without Converting to a [*18] Motion for Summary Judgment*

Money Tree submitted two categories of evidence that are relevant to the Rule 12(b)(6) Motion to Dismiss. *See* Filing 21-3; Filing 21-4; Filing 21-6. The first category includes copies of the text messages exchanged between Money Tree and Vallesillo. Filing 21-3; Filing 21-4. Money Tree's copies of the text messages are "necessarily embraced by the pleadings," *LeMay*, 18 F.4th at 289, because these messages form the basis of the TCPA violation alleged in the Amended Complaint. Filing 17 at 7 (¶ 40) ("Defendant sent unsolicited texts Plaintiff's and the Class members' telephones without having their prior express written consent to do so."). Thus, the Court can consider the text messages when ruling on the Rule 12(b)(6) Motion to Dismiss.

The second category of evidence that is relevant to Money Tree's Rule 12(b)(6) Motion to Dismiss includes "a true and accurate copy of the results of a Commercial and Government Entity Program's ('CAGE') website search [Money Tree] ran." Filing 21-5 at 1 (¶ 3). That exhibit purports to show that Vallesillo's phone number is a business line rather than a residential line. Filing 21-6; *cf.* 47 U.S.C. § 227(c)(1) (discussing "the need to protect residential telephone subscribers' privacy rights to avoid receiving [*19] telephone solicitations to which they object"). Unlike the text messages between Money Tree and Vallesillo, Money Tree's evidence that Vallesillo's phone number is a business line is not "necessarily embraced" by the Amended Complaint. *LeMay*, 18 F.4th at 289. However, it is a "matter[ ] of public record," *id.* that the Court can judicially notice. Federal Rule of Evidence 201(b)(2) provides, "The Court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The CAGE website search, which the Court replicated, was performed on a military website, https://cage.dla.mil/, which is a "source[ ] whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The CAGE website explains that CAGE codes are provided by the Defense Logistics Agency, an agency within the Department of Defense, for entities that "are doing business with the U.S. Government to include contracts and grants." https://cage.dla.mil/Info/about. The CAGE website states that the legal business name associated with Vallesillo's number is "Raging Bull Consulting LLC" and that the point of contact for the business is Vallesillo, with an address in Omaha, Nebraska, [*20] where Vallesillo is a resident. Filing 17 at 2 (¶ 9). Because the status of Vallesillo's phone number as a registered business line "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"—the CAGE Website—the Court takes judicial notice of this fact. Fed. R. Evid. 201(b)(2); *see also* Fed. R. Evid. 201(c)(1) ("The court . . . may take judicial notice on its own[.]").

Further supporting the legitimacy of the CAGE designation as a business line is Vallesillo's declaration submitted with his brief opposing dismissal. Filing 23-1. His declaration states, in relevant part:

> 4. My phone number ending in 8312 is my residential phone number.
>
> 5. My phone number ending in 8312 is my personal cell phone.
>
> 6. I have no personal phone numbers other than my cell phone.
>
> 7. I use my phone number ending in 8312 to text and call my friends and family for personal reasons.
>
> 8. I have a separate phone number for business purposes so that my customers do not call my personal cell phone for business purposes.

Filing 23-1. Notably, Vallesillo does not dispute that his phone number is registered as a business line; instead, he simply avers that he uses it for residential and not business purposes. Thus, the Court concludes **[*21]** it is appropriate to judicially notice that Vallesillo's phone is registered as a business line. This evidence is a "matter[ ] of public record," *LeMay*, 18 F.4th at 289, that is not "outside the pleadings." Fed. R. Civ. P. 12(d). Accordingly, Money Tree's Motion to Dismiss does not need to be converted to a Motion for Summary Judgment pursuant to Rule 12(d).

*4. Vallesillo Stated a Plausible Claim for Relief on His First Cause of Action*

To state his first claim, Vallesillo must have alleged that he "received more than one telephone call within any 12-month period by or on behalf of [Money Tree] in violation of" 47 C.F.R. § 64.1200(c)(2). 47 U.S.C. § 227(c)(5). That regulation prohibits "initiat[ing] any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2). Thus, to survive dismissal, Vallesillo must have plausibly alleged that (1) he received multiple "telephone solicitation[s]" in a one-year period, (2) his phone number was registered on the do-not-call registry,[2] and (3) his telephone number was "residential."

There is no question that Vallesillo plausibly alleged that he received multiple "telephone solicitation[s]" within a one-year period from Money Tree. Filing 17 at 4 (¶¶ **[*22]** 23-24) (describing multiple messages Vallesillo received starting in September 2023); Filing 21-3 (Money Tree's exhibit showing at least six consecutive messages sent to Vallesillo within a one-month period). Nor is there any doubt that Vallesillo plausibly alleged he was registered on the do-not-call registry when he received these solicitations. Filing 17 at 4 (¶ 22) ("Plaintiff's phone number ending in 8312 had been registered on the Federal DNC Registry since December 21,

---

[2] Money Tree argues that Vallesillo "*did* consent to receive communications from Money Tree" because he responded to the solicitations. Filing 21 at 7 (emphasis in original). However, Money Tree's copies of the text messages plainly show that Money Tree had sent Vallesillo at least six messages before Vallesillo responded. Filing 21-3; Filing 21-4. Money Tree failed to cite any TCPA caselaw stating that an alleged violation is rectified if the plaintiff replies to the violator's sixth text message. *See* Filing 21 at 7-8. Instead, Money Tree argues that "Plaintiff did not ask Money Tree to stop contacting him, inform Money Tree that it had the wrong number, or clarify that Plaintiff's number was not associated with a business," apparently contending that Vallesillo's failure to take these actions qualified as his consent to the phone solicitations by Money Tree. Filing 21 at 7. Again, Money Tree fails to cite any proposition of law for this position. Money Tree's position is squarely contradicted by the language of 47 C.F.R. § 64.1200(c)(2), which prohibits "initiat[ing] any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." Thus, Vallesillo's plausible allegation that he was registered on the do-not-call registry when he received Money Tree's solicitations suffices to satisfy this element for purposes of the Rule 12(b)(6) Motion to Dismiss.

2021."). Thus, the real dispute is whether Vallesillo plausibly alleged his telephone number was "residential," despite its official registration as a business line. Filing 21-7.

The Court concludes that Vallesillo has plausibly alleged his telephone number was "residential." As discussed above, Vallesillo's number is registered as a "business" number by the Department of Defense. Filing 21-7. However, other district courts in this Circuit have determined that "TCPA protection extended to a particular telephone number that was used for both business and residential purposes." *Smith v. Truman Rd. Dev., LLC*, No. 18-670, 2020 U.S. Dist. LEXIS 74330, 2020 WL 2044730, at *11 (W.D. Mo. Apr. 28, 2020) (citing *Blevins v. Premium Merch. Funding One, LLC*, No. 2:18-CV-377, 2018 U.S. Dist. LEXIS 183362, 2018 WL 5303973, at *2 (S.D. Ohio Oct. 25, 2018)), *aff'd sub nom. Beal v. Outfield Brew House, LLC*, 29 F.4th 391 (8th Cir. 2022).[3] Lacking Eighth Circuit guidance, the Court observes that the Ninth Circuit has gathered cases "assessing whether **[*23]** mixed-use phones are 'residential' within the meaning of § 227(c)." *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1225 (9th Cir. 2022). On this issue, the *Chennette* court observed,

> [D]istrict courts have considered: (1) whether plaintiffs have held out to the public or advertised their phone numbers for business purposes; (2) whether plaintiffs' phones are registered with the telephone company as residential or business lines, including whether the phones are part of a family usage plan; (3) whether, and the extent to which, plaintiffs use their phones for business transactions or employment; (4) whether, and the extent to which, plaintiffs' employers (or other business entities) pay for or reimburse plaintiffs for their phone bills.

*Chennette*, 50 F.4th at 1225 (citations omitted). The Court finds it prudent to adopt these considerations for the purpose of determining whether Vallesillo has plausibly alleged that his telephone line was "residential."

Against the evidence that Vallesillo's phone number is registered as a business line, Filing 21-3, are Vallesillo's allegations that the phone is "residential" and "his personal cell phone" and that he "maintains no other personal phone numbers," "uses his phone number . . . to communicate for personal reasons with his friends and family," and "maintains **[*24]** a separate phone number for business purposes so that his customers do not call his personal cell phone." Filing 17 at 3-4 (¶¶ 17-21). Thus, Vallesillo alleges that he never "held out to the public or advertised [his] phone number[ ] for business purposes" or "use[d] [his] phone[ ] for business transactions or employment." *Chennette*, 50 F.4th at 1225. There are no allegations concerning "whether, and the extent to which, plaintiffs' employers (or other business entities) pay for or reimburse plaintiffs for their phone bills." *Id.* Because Vallesillo's allegations satisfy at least some of the factors considered by other courts when determining whether a phone number was "residential," the Court concludes that Vallesillo's complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Far E. Aluminium Works Co.*, 27 F.4th at 1364; *compare Smith*, 2020 U.S. Dist. LEXIS 74330, 2020 WL 2044730, at *12 (denying summary judgment because "there [was] a dispute of fact regarding whether [the plaintiff's] use

---

[3] The Eighth Circuit's opinion affirming the Western District of Missouri did not discuss whether any particular line was properly designated by the district court as "residential" or "business." *Beal*, 29 F.th 391.

of his cell phone qualifie[d] him as a 'residential telephone subscriber' or whether it is a business line" where only sixty percent of the plaintiff's use was business related), *with* Filing 17 at 4 (¶ 21) (alleging that "customers do not call [Vallesillo's] **[*25]** personal cell phone for business purposes"). Accordingly, Money Tree's Motion to Dismiss for failure to state a claim is denied as to Vallesillo's First Cause of Action.

*5. Vallesillo Stated a Plausible Claim for Relief on His Second Cause of Action*

To state his second claim, Vallesillo must be able to show that he "received more than one telephone call within any 12-month period by or on behalf of [Money Tree] in violation of" 47 C.F.R. § 64.1200(d)(1). 47 U.S.C. § 227(c)(5). That regulation provides, "Persons or entities making artificial or prerecorded-voice telephone calls . . . for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list." 47 C.F.R. § 64.1200(d)(1). Vallesillo alleges that Money Tree "solicited Plaintiff and the class without maintaining a written telemarketing policy, resulting in violations against Plaintiff." Filing 17 at 8 (¶ 49). Money Tree's arguments for dismissing Vallesillo's second claim are largely the same as its arguments for dismissing the first, namely, that Vallesillo "consented to the communications from Money Tree, and never informed Money Tree or otherwise pled in his complaint that the number Money Tree contacted was a residential number." Filing 21 at 7-8. The **[*26]** Court considered and rejected those arguments above. In addition, Money Tree indicated that it does indeed "maintain an internal call list." Filing 21 at 6. This factual allegation in contradiction of the Amended Complaint is, of course, not cognizable in considering Money Tree's Motion to Dismiss. *See Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (stating that "factual allegations [that] were not included in [the] amended complaint . . . cannot be considered on a motion to dismiss"). Therefore, Vallesillo's complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" for a violation of 47 C.F.R. § 64.1200(d)(1). *Far E. Aluminium Works Co.*, 27 F.4th at 1364. Accordingly, Money Tree's Motion to Dismiss for failure to state a claim is denied as to Vallesillo's Second Cause of Action.

## III. CONCLUSION

Vallesillo's Amended Complaint sets forth facts sufficient to establish Vallesillo's standing to sue under the TCPA. In addition, Vallesillo plausibly alleged two TCPA violations. Accordingly,

IT IS ORDERED that defendant Money Tree's Motion to Dismiss, Filing 20, is denied.

Dated this 23rd day of May, 2024.

BY THE COURT:

/s/ Brian C. Buescher

Brian C. Buescher

United States District Judge

2024 U.S. Dist. LEXIS 97600, *26

**End of Document**